The Counsel for Buck, filed the following petition for re-hearing.

Impelled by á strong sense of the injustice done to his client, by the opinion pronounced against him in the present case, and of the disastrous consequences which will result to him, should it remain unaltered, the undersigned is induced, with some reluctance, to trouble the court with this petition, soliciting respectfully of your honors, a re-examination of the case, with a view to a re-hearing, if upon a careful review of the facts involved in its decisions, and *the principles of equity, which are applicable to the case, even reasonable doubts, should exist of its justice or propriety.
In selecting the points for examination, in the respectful review of the opinion, wfiich his just sense of duty, compels him to take on this occasion, the first which presents itself, is the staleness of the demand, asserted by the complainants in their bill, and the lapse of time, a period of forty years, that was permitted by them to pass, before any exhibition of their rights, or any attempt to assert or establish the same, by an appeal to a court of justice.
That a period of twenty years, as a convenient time, within which all equitable rights must be asserted, seems at length, to be conclusively, and incontrovertibly established, by successive adjudications of this court, and its existence, as well as justice to be recognized by your honors,in the opinion now complained of. And if the wisdom and equity of enlightened chancellors, have adopted this as a convenient and suf *170 ficient period for the assertion of all equitable rights* what additional force, may the lapse of double that period, be relied on by a defendant, claiming to and protect himself, in the enjoyment of his rights, against the real or pretended equity of a party, who has slept upon his rights, until the entire generation, which was cotemporary, with its supposed origin, is swept away ? How can he be prepared by' living witnesses, when nine tenths, or a far greater proportion of the then existing generation, are reposing in the silent tomb, to refute or repel the fabricated tale, of a single.witness, to explain ambiguous or doubtful facts, or to establish by satisfactory, or indeed by any kind of evidence, the fulfilment or discharge of an obligation, or duty, which he may he willing to admit,once, and at a period so far removed, was entitled to the greatest force? Whether the peculiar condition of a complainant, or those through whom he derives his title, as infants, coverture,persons imprisoned, of absent from the United States, or otherwise privileged, and within the exceptions of our limitation laws, ought not to he exempted from the operation of this equitable bar, where only twenty years, or something upwards have elapsed, need not be controverted here. Perhaps they ought; and on this admission, it might well be questioned, whether, after the lapse of thirty-five or forty years, any exception or privilege whatever should be allowed, from the moral impossibility, after the lapse of the latter periods, to produce any explanatory or countervailing proof, to repel an unjust or unfounded claim, and what should be held totally obliviated, and forever barred.
But the court, in this opinion, seem to intimate, that the residence of Thomas Luttrell, whose estate the defendant holds, should constitute an exception, or form some excuse fpr long omission, in the behalf of the complainants, to assert their rights.
The residence of Colonel Luttrell, at the origin of this transaction, was in North Carolina; there it continued till his death. There his heir continued to reside, after this, inheritance was cast upon him. He was always amenable to the tribunals there. The *171 courts of justice, of that state, as well as those of Kentucky, in- which the lands were selected, were open and accessible to receive and adjudicate on the complainant’s fight to a conveyance of the land in question, and neither the complainants,, or those from whom they derived their title, are alleged, or shewn to have been at any time-disabled, or in any manner privileged, as to the assertion of their rights. If then, neither from the improper conduct of the defendant, or any privilege on behalf of the complainant, known or- recognized by any act of limitation, or recognized by the decision, or established by any rule of the chancellor, the complainants are justified in having thus long slept upon their pretended equitable rights; on what principle of equity, of conscience, or of public policy, are the complainants here, to be permitted and sanctioned by the decision of your honors, in the assertion of their claim, evidenced only^. by a mutilated or cancelled bond, never till within a few years past, exhibited to mortal eyes; never seen or heard of by Luttrell, from the supposed period of its execution, till his death; never found or seen amongst the papers of Richard Henderson, by those-who were in the habit of handling them on all occasions, as deposed by his brother Pleasant Henderson, and locked-up in the secret recesses of Umstead and wife,, for. some'twenty or thirty years?
If then, a bond for the direct payment- of money,, or a mortgage of record, of the utmost publicity to the world, without any shadow of suspicion attached-to either, for securing the payment of money fairly due, shall be presumed, to be satisfied and discharged, or released, after the lapse of twenty years, unless-some evidence of payments, or a clear recognition of the existence of the demand, within that period; shall a bond like the present, which has existed for the period of forty years, having its origin in a former generation, concealed and unknown, and unheard of,, by the children and representatives of the deceased obligor, for the conveyance of land, held and enjoyed, during the greater part of that period, under an entire different title, the will of Col Luttrell, exhibted as the evidence of title for the first time. But three or four years since, and when thus exhibited, in a mutila *172 ted and entirely cancelled state, be received and sanctioned by the decision of a court of equity, as clear and decisive evidence of present existing equitable right, on behalf of the complainants in the present case. Surely equity and justice, as well as the principles of public policy, which looks to some period, of quiet and repose, against stale and antiquated claims like this, forbids.
To relieve a claim thus ancient and obliviafed., from the operation of this just and equitable principle. To set up a cancelled bond at any, even the most recent period from its date, not only from the suspicion, but occular evidenceand demonstration, of the existence of its former legal force, and obligation; the most satisfactory, conclusive, and unsuspicious evidence, should be required by the court. Has such testimony been adduced by the complainants in the present case? For the existence of such proof, we are referred to the depositions of John Umstead, and Susanna his wife.
The depositions of these witnesses, taken in the ejectment formerly pending between these parties, in which they were neither pertinent nor relative to the points then in issue, were consented to be read. Af-tertbe death of Mrs. Urmstead, by which the evidence w’ould-otherwise have been lost to the complainant, dtuie'i the most entire conviction of the defendant’s counsei/thdt there was nothing to be apprehended from their ¡use. In this opinion, the decree which you have'pronounced against his client, is a bitter, though *it..'may be a useful lesson, how distrustful he'should be, of his own judgment, and how dangerous it is, to indulge in concessions to an adversary, in aTcourf of justice.
The deed of conveyance executed by these two Witnesses, for the land in question, for a large and valuable moneyed consideration, although it contains no stipulation for a general warranty of the title, except against the heirs of the grantors, and all deriving, or claiming title from them, if not effecting their competency to give evidence in this cause, yet, by operating, either on their apprehensions of future trouble or responsibility, or their inclinations to make *173 good, that which they have conveyed for so large a consideration, must be supposed to diminish, in some degree at least, that full confidence, which would be due to persons under the influence of no such considerations, as these considerations present. But passing by this consideration of natural and inevitable bias, is not John Umstead, the husband, the master of the house, convicted, not by the ordinary proof of other witnesses, who might swear falsely against him, but by himself, by the same John Umstead, by his answer in chancery, to the bill of Tanner, filed and now of record, of direct and wilful perjury? Whether this wilful falsehood exists in the statement, in the deposition, or the answer, we cannot certainly know. The presumptions are strongly in favour of the latter; but there is not time to recapitulate them all. The deposition of Pleasant Henderson and other testimony in the cause, are referred to, as the sources from which they may be collected. If the rule is adopted and recognized, that all equities are barred, by the lapse of twenty years, and the present case is not attempted by either, the proof or allegations of the complainants, to be within any of the exceptions of our statutes of limitation, or any exception of the rule, which has been recognized by courts of equity, how or wherefore, is the defendant in the case, to be stripped of its protection? Is no rule, or at the discretion of the chas his mere opinion of the purity and justice plainant’s claim, or that it is still existing, < released or satisfied, to determine whethei] shall be applied, or be set aside? Then is no avail, of no invariable application; but to the arbitrium, the opinion, whim or capric? _ chaucellor, and the rule itself, so far from affording' the protection, which was contemplated in its introduction, is a mere vain and idle illusion, a real and substantial mockery.
The case of the defendant, thus stripped of the protection of this equitable bar, this cancelled and mutilated'bond, this equity which had its origin forty odd years gone by, during a former generation, is to be resuscitated and restored to all its former energy, by the evidence of Umstead and wife alone. Una- *174 stead, by his own solemn oath, of record, has stamped, with the seal of reprobation, all claim to credence. He has sworn, in his answer to fanners bill, that contract was entirely vacated, and the bond in qU¿stjon entirely cancelled. In this transaction, he was the prime and active agent. The wife, as a feme covert, could have had no participation. Shall her testimony then, alone, in flat contradiction to the answer of the husband, which was sworn to at a time when the transaction was comparatively fresh and recent, be sufficient to set up and restore to active force and vigor, a bond which had been cancelled and remained not only dormant, but unheard of for some thirty years; because it does not appear from the present transcript, that she, a party respondent in the same answer, had been duly qualified to the truth of its contents? She ought to be presumed, if not to have testified to its truth on oath, at least to have been privy to its coutents. She seems to have been the historian of the times, the chronicler of the transactions of both her hushands. The tender chore amie, of William Bailey Smith, with a memory that never fails; with a perseverance in narration that never tires; who recollects the transactions of thirty and forty years gone by, as though they had been occurrences of yesterday. Yet she is unfortunately contradicted, and her credibility much impeached by the testimony of Pleasant Henderson and others, who testify to the utter, apparent inability of her favorite, William Bailey Smith, to have purchased or paid an adequate consideration for a bond, stipulating for the conveyance of upwards of 6000 acres of valuable and fertile land.
But passing by these considerations, and admitting that these objections can be surmounted, have the complainants, as purchasers from Wm. B. Smith, shown themselves entitled to a conveyance of the land in question, from the bana fide purchaser, from the legitimate heir at law of Richard Henderson? The bond bears date in 1780. The assignment endorsed thereon, if genuine, bears date in 1788. It is under the signature of Richard Henderson, heir at law. It is not expressed to be for value received, as is usual in assignments of such bonds, where the pur *175 chase money is paid, or the transfer is made on a bonajide sale*
No presumption arises, therefore, in the present case, that payment of the consideration, or of any part of the purchase money was ever made,especially as the obligor of the bond was never called on for a fulfilment of its stipulations, as Smith is shown to have been poor, wortíiless and without visible means to have made the purchase or the payment. And to crown all, Richard Henderson the younger, were the assignment genuine, and for an adequate consideration fully paid, as heir at law, in which character alone, he makes the transfer, had no pretence or color of right or authority for such an act. The land in this bond, stipulated to be conveyed, having been devised by the obligee, R. Henderson, to be sold, and the proceeds distributed amongst his children, six in number, Richard, although one of the executors, never qualified as such; and consequently, as heir at law or executor, he had neither power or control over the obligation or even a right to its custody or possession.
Aware of this fatal objection, to this chasm in the deduction of their title, the complainants, after the cause had been prepared for trial, filed an amended bill against these six children, the inhabitants of a former age, a majority of whom áre fairly presumed to have been long since the tenants of a quiet tomb; and without inquiry whether they are alive or dead, stating at hazzard, without proof, or even ground for a plausible conjecture of the truth of the suggestion, that they had all consented to and acquiesced in this unauthorized and void transfer, of the bond of their ancestor, to William Bailey Smith; and praying, on this most probable and rational supposition, without more, that they all be compelled to unite in a conveyance of their interest, in this land, to the complainants. And on some proof of the publication of an order to advertise against these probable non-residents of this state, or of the world, the bill is taken for confessed against them. And, thereupon, without any previous conveyance from them, or divestment of their interest in this bond, the land which it stipu *176 lates to convey, is directed to be conveyed, by the defendant, Buck, the bona fide holder of the legal title, to the complainants. This is a summary and expeditious mode of procuring title in siith cases. But is it just, or conformable to practice and chancery usage? Is the consentor acquiescence, given? when or how, or in what form, or on what consideration, is not alleged or shown, of those who are the exclusive owners, or who have the exclusive control of this bond, to pass the interest or title of the land, which is stipulated for therein, to William B. Smith, or to his purchasers or assignees.
The proof of publication of the order to advertise against these defendants, is believed to be insufficient, according to the adjudications of this court. The attention of the court is respectfully solicited to this part of the record, without farther observation.
The counsel for the defendants, Urged, with much confidence, that in the character of purchaser, without notice of the pretended equitable claim,endeavored to be derived by the complainants, from the purchase under W. B. Smith, he was entitled to the protection of a court of equity.
But of this defence, they are stripped by yous? honors, on the ground, as expressed in the opinion, delivered herein, that he is presumed to have had notice of the deed executed by Samuel Hopkins, as the attorney in fact, of Smith, which, being of record* in conformity with the statute, regulating conveyances, and which, containing a recital of the bond from Lutterell to Henderson, should operate as an implied or statutary notice of the existence, as well as contents, of the bond in question.
This argument would have applied with full and conclusive force, if actual notice of the existence and contents of this deed containing this recital, had been brought home to Buck. But none such is pretended. The laws requiring the recording of conveyances of legal titles, or estates of inheritance only; and constituting such records, notice to all the world, of the existence of such deeds, has never been construed by courts of equity, to embrace mere equitable rights, *177 evidenced by bond alone. Nor is it believéd', that any authority or adjudication can be found, by which the effects of implied or presumptive notice of the existence of equitable rights, oft the titles of purchaSers, without express or actual notice of the existence of such equitable rights, so as to defraud such purchasers of their just and legal rights, as acquired by fair and honest purchasers for an adequate consideration, upon the ground, that the evidence of the existence of such equitable rights, were to be found of record, by the record of the bonds themselves, which were the evidences of such right, much less by the record of a deed, which contains merely, a recital of the former existence of such bond, without any exhibition or manifestation of the entire contents, or stipulations, which such bond contained. The purchaser, bona fide of legal estates of inheritance, has surely never been held, by any court of equity, in order to entitle himself to the shield and protection, which his character of a purchaser, without notice, entitles him, to search the record of deeds for the existence of equitable claims, existing in bonds or articles, for the conveyance of the land he is about to purchase, before he can make a safe investment of his money.
Notice-, on the part of the defendant, Buck, of the existence of this bond, is not even alleged or averred in the complainant’s bill. It has escaped the attention of his counsel. If he is correct in this, the most precise and conclusive evidence of the fact, 'could aid him, 'Or entitle him to the claim for which he prays.
The fact* that complainant, Holloway, was settled and resided on the land in contest, claiming, improving, and enjoying it as his own, ought not, and cannot have the slightest influence on this question, as the claim of Umstead and wife-, to the entire interest of Colonel Luttrell, in the grant, as devisee, in right of the wife* under the will of Luttrell, in which character, they had claimed and held it, being matter of general notoriety; and a conveyance for a portion of this interest, by them to William B. Smith, being of record, as early as the year 1792, the defendant, *178 Buck, about to acquire the title of the heir at law, of Colonel Luttrell, in the year 1818 or ’19, fully apprised of the existence, as well as the nature and extent of claim of title, on the part of Umstead, in the character of devisee of Luttrell, but fully advised and convinced of its invalidity, had no motive or inducement, is not to be presumed to have en-quired farther, whether there might not be some other in existence, or cancelled bond, of some thirty odd years standing, supposed to have been once executed by the said Luttrell to Richard Henderson, for some portion of that inheritance, which he was about acquiring from the heir at law.
Actual resi-j deuce upon land, is notice to all the world of every claim, which the tenant may legally assert in de-fence of his possession.
But there is not a tittle of evidence, that the slightest intimation was ever, in truth, given of the existence of such claim. And if, in this, his counsel are not mistaken, there is surely nothing in his case, which should strip his client of the protection of the character to which he thinks he has a fair and unquestioned claim, of a purchaser, 6ona Jide, without notice of the complainant’s claim.
A re-hearing of the whole cause is respectfully solicited..